Jamie L. Lucia (SBN 246163)
STEPTOE LLP
One Market Plaza
Steuart Tower, Suite 1070
San Francisco, CA 94105
Telephone: (415) 365-6711
Facsimile: (415) 365-6700
Email: jlucia@steptoe.com

J. William "Bill" Toth (SBN 300055)
STEPTOE LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
Telephone: (202) 429-3000
Facsimile: (202) 429-3902
Email: btoth@steptoe.com

Nicolena F. Beck (SBN 336158)
STEPTOE LLP
633 West Fifth Street, Suite 1900
Los Angeles, CA 90071
Telephone: (213) 439-9400
Facsimile: (213) 439-9599
Email: nbeck@steptoe.com

Attorneys for Defendant's Counsel
BAYRAMOGLU LAW OFFICES LLC

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

dbest Products, Inc.,

Plaintiff,

v.

Guangdong Haixing Plastic and Rubber Co., Ltd.,

Defendant.

Case No. 2:25-cv-11331-MWC-AS
Related Case: 2:24-cv-10694-MWC-JC

Hon. Michelle Williams Court

**OPPOSITION TO PLAINTIFF'S MOTION TO DISQUALIFY COUNSEL AND TO STRIKE DEFENDANT'S PAPERS**

[*Declarations of David Silver, Gokalp Bayramoglu, and Jamie Lucia Filed Concurrently herewith*]

Hearing Date: March 27, 2026
Time: 1:30 p.m.

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

# TABLE OF CONTENTS

Page

I. Introduction ................................................ - 6 -

II. Background ................................................ - 7 -

A. Dbest's Coercive and Aggressive Litigation Practices. ................ - 7 -

B. The iBeauty Case. ................................................ - 8 -

1. *BLO's Representation of the iBeauty Parties* ................ - 8 -

C. dbest Continues Its Pressure Tactics Through Filing the Instant Action. ................................................ - 10 -

1. *BLO's Current Representation of Haixing* ................ - 10 -

D. The Current Withdrawal and Disqualification Dispute. ................ - 11 -

III. Legal Standard ................................................ - 11 -

IV. BLO Should Not be Disqualified ................................................ - 13 -

A. dbest Lacks Standing to Assert its Claimed Conflict. ................ - 13 -

B. BLO Has Not Violated Rule 1.9(a), as There is No Conflict. ................ - 16 -

C. BLO Did Not Share Any Confidential Information. ................ - 19 -

D. Because Disqualification is not Warranted, No Remedy is Warranted, but dbest's Extreme Proposed Remedy is Entirely Improper. ................................................ - 21 -

E. dbest Should Pay BLO's Attorneys' Fees ................................................ - 22 -

V. Conclusion ................................................ - 24 -

# TABLE OF AUTHORITIES

Page(s)

**Cases**

30 Cal. App. 5th 602, 616 (2018) .......... 12

*Acacia Pat. Acquisition, LLC v. Superior Ct.*, 234 Cal. App. 4th 1091 (2015) .......... 14, 15

*Alchemy II, Inc. v. Yes! Ent. Corp.*, 844 F. Supp. 560 (C.D. Cal. 1994) .......... 15

*Beltran v. Avon Prods., Inc.*, 867 F. Supp. 2d 1068 (C.D. Cal. 2012) .......... 11, 12, 13, 24

*Celgard, LLC v. LG Chem, Ltd.*, 594 F. App'x 669 (Fed. Cir. 2014) .......... 18

*In re Cnty. of L.A.*, 223 F.3d 990 (9th Cir. 2000) .......... 11

*Costello v. Buckley*, 245 Cal. App. 4th 748 (2016) .......... 11, 12

*Diva Limousine, Ltd. v. Uber Techs., Inc.*, No. 18-CV-05546-EMC, 2019 WL 144589 (N.D. Cal. Jan. 9, 2019) .......... 13, 15

*Elliott v. Elliott*, No. 1:21-CV-00897-SAB, 2021 WL 5360091 (E.D. Cal. Nov. 17, 2021) .......... 13, 14

*Eric B. Fromer Chiropractic, Inc. v. New York Life Ins. & Annuity Corp.*, No. CV 15-04767-AB (JCX), 2017 WL 11632540 (C.D. Cal. Sept. 22, 2017) .......... 20

*Est. of Adams v. City of San Bernardino*, 658 F. Supp. 3d 784 (C.D. Cal. 2023) .......... *passim*

*Franklin v. Kaypro Corp.*, 884 F.2d 1222 (9th Cir. 1989) .......... 22

*Freedom Wireless, Inc. v. Boston Commc'ns Group, Inc.*, No. 2006-1020, 2006 WL 8071423 (Fed. Cir. Mar. 20, 2006) .......... 18

*Great Lakes Constr., Inc. v. Burman*, 186 Cal. App. 4th 1347 (2010) .......... 13, 14

*Gregori v. Bank of Am.*,
207 Cal. App. 3d 291 (1989) ........ 12, 23

*Haynes v. City & Cnty. of San Francisco*,
688 F.3d 984 (9th Cir. 2012) ........ 24

*Hous. Is a Hum. Right v. Cnty. of Orange*,
No. SACV19388DOCJDEX, 2019 WL 3002852 (C.D. Cal. June 13, 2019) ........ 17

*Immersion Corp. v. Sony Computer Ent. Am. LLC*,
188 F. Supp. 3d 960 (N.D. Cal. 2016) ........ 22

*Jarvis v. Jarvis*,
33 Cal. App. 5th 113 (2019) ........ 13

*Kennedy v. Eldridge*,
201 Cal. App. 4th 1197 (2011) ........ 14, 15, 16

*Kimberly-Clark Corp. v. Johnson & Johnson*,
745 F.2d 1437 (Fed. Cir. 1984) ........ 19

*Lear, Inc. v. Adkins*,
395 U.S. 653 (1969) ........ 17

*Lennar Mare Island, LLC v. Steadfast Ins. Co.*,
105 F. Supp. 3d 1100 (E.D. Cal. 2015) ........ 11

*Mosqueda, v. Sedgwick Claims Management Services et al.*,
No. 2:21-CV-04811-SB-AS, 2022 WL 4546879 (C.D. Cal. Aug. 24, 2022) ........ 20

*In re MSTG, Inc.*,
675 F.3d 1337 (Fed. Cir. 2012) ........ 21

*Optyl Eyewear Fashion Int'l Corp. v. Style Companies, Ltd.*,
760 F.2d 1045 (9th Cir. 1985) ........ 13

*Prism Techs. LLC v. Sprint Spectrum L.P.*,
849 F.3d 1360 (Fed. Cir. 2017) ........ 17

*QuickLogic Corp. v. Konda Techs., Inc.*,
618 F. Supp. 3d 873 (N.D. Cal. 2022) ........ 12

*Robinson v. Open Top Sightseeing San Francisco, LLC*,
No. 14-CV-00852-PJH, 2018 WL 2088392 (N.D. Cal. May 4, 2018) ........ 20

*Telectronics Proprietary, Ltd. v. Medtronic, Inc.*,
836 F.2d 1332 (Fed. Cir. 1988) ........ 16

*Trone v. Smith*,
621 F.2d 994 (9th Cir. 1980) .......... 12

*Ulead Sys., Inc. v. Lex Computer & Mgmt. Corp.*,
351 F.3d 1139 (Fed. Cir. 2003) .......... 17

*Uniloc USA, Inc. v. Motorola Mobility LLC*,
52 F.4th 1340 (Fed. Cir. 2022) .......... 17

*Victaulic Co. v. Am. Home Assurance Co.*,
80 Cal. App. 5th 485 (2022) .......... 12

*W. Coast Theater Corp. v. City of Portland*,
897 F.2d 1519 (9th Cir. 1990) .......... 23

*Wutchumna Water Co. v. Bailey*,
216 Cal. 564 (1932) .......... 12

*Zheng v. Internet Corp. for Assigned Names & Numbers*, No. 2:25-CV-04808-SPG-AJR, 2025 WL 4055401 (C.D. Cal. Dec. 23, 2025) .......... 23, 24

**Statutes**

18 U.S.C § 1927 .......... 22, 23, 24

35 U.S.C. §§ 102–103 .......... 19

**Rules**

California Rules of Professional Conduct, Rule 1.9(a) .......... 16

L.R. 83-3.1.2 .......... 12

**Other Authorities**

U.S. Patent No. 12,103,576 .......... 8

U.S. Patent Nos. 12,275,446 .......... 8

## I. INTRODUCTION

Plaintiff dbest Products, Inc.'s ("dbest") Motion to Disqualify is not a good-faith effort to protect client confidences or preserve the integrity of these proceedings. It is the latest "tactical abuse" in dbest's calculated litigation strategy designed to deprive Defendant Guangdong Haixing Plastic and Rubber Co., Ltd. ("Haixing") of its right to counsel of choice, harass Haixing, increase costs, and gain leverage through intimidation rather than merit. Unable to identify any actual conflict of interest, dbest not only mischaracterizes its cited authority—which actually undermines dbest's positions—but also distorts the factual records of the instant case and its prior litigation involving Bayramoglu Law Offices LLC ("BLO").

When the entire record of dbest's litigation campaign is evaluated, dbest's motive is clear. dbest seeks to use disqualification not to protect the sanctity of any attorney-client relationship but rather to run a prolific patent-litigation campaign, while preventing each successive target from using any prior public information or arguments in defense. Worse, it seeks to prevent each new target from hiring attorneys who developed those arguments in the first place, based on detailed analysis of the public record. Such a result contravenes public policy, and it should be rejected.

It is abundantly clear that there is no basis for disqualification—dbest itself has never had an attorney-client relationship with BLO and so has no standing to seek BLO's disqualification. BLO's prior clients' settlement agreement with dbest did not give them any interest in the validity of dbest's patents and did not create adversity between BLO's prior clients and its current client, Haixing. Indeed, BLO was not involved in negotiating the agreement and has never even seen the settlement agreement. dbest's theory depends on the false premise that patent invalidation is adverse to the commercial interests of a [redacted]

[redacted]

Nor has BLO disclosed any client confidential information through its representation of Haixing. In its prior case against dbest, BLO served invalidity contentions that identified public literature that anticipated dbest's claimed inventions or rendered them obvious. Those contentions are the crux of dbest's assertions here. BLO had no duty of confidentiality with regard to those contentions; nor could any impropriety stem from BLO's reliance on ***its own work product*** analyzing public literature and patent claims. To hold otherwise would disrupt the entire practice of law.

Disqualification is a drastic remedy, subjected to strict scrutiny by the Court, and imposed only where substantial evidence demonstrates that an attorney's representation of a client jeopardizes the fiduciary relationship with a former client. dbest has shown none. Instead, it is dbest's conduct that has threatened the integrity of these proceedings.

Accordingly, the Court should deny dbest's motion in its entirety and award BLO its fees incurred in connection with this opposition due to dbest's vexatious conduct.

## II. BACKGROUND

### A. Dbest's Coercive and Aggressive Litigation Practices.

Dbest holds at least eleven registered patents for its various shopping cart products, two of which it asserts in this case. dbest is well known for its highly litigious nature, especially with respect to its patents. During the limited span from December 2024 to February 2026, dbest has been involved in more than 50 lawsuits related to alleged patent infringement. BLO represented parties accused of infringing dbest's patents in several of those.

**B. <u>The iBeauty Case.</u>**

Shortly after U.S. Patent No. 12,103,576 ("the '576 Patent") issued, dbest sent a series of so-called "take-down" letters to Amazon, alleging that several companies sold storage bins through Amazon that infringed that patent. Amazon removed these companies' listings for the identified products. (Case 2:24-cv-10694-MWC-JC ("Case 10694"), Dkt. No. 1 ¶¶ 2, 13–25.)

In December 2024, six parties (collectively, the "iBeauty Parties")[1] filed a declaratory judgment action against dbest, seeking a finding that their respective storage bins do not infringe the '576 Patent and challenging the validity of that patent. (Case 10694, Dkt No. 1.)[2] dbest later asserted counterclaims concerning U.S. Patent Nos. 12,275,446 ("the '446 Patent") and 12,304,546 ("the '546 Patent"), which are the patents at issue in this case. (Case 10694, Dkt No. 48.)

**1. *BLO's Representation of the iBeauty Parties***

Initially, a different law firm represented the iBeauty Parties in their declaratory judgment action against dbest. (*See id.* at 1, 11–12.) In March 2025, however, BLO substituted as counsel for the iBeauty Parties. (Case No. 10694, Dkt. Nos. 18–37; Declaration of David Silver ("Silver Decl.") ¶ 2.) Shortly thereafter, the parties engaged in preliminary settlement discussions, which proved unsuccessful. (*Id.*) On September 15, 2025, BLO served invalidity contentions on behalf of the

---

[1] The declaratory judgment plaintiffs included iBeauty Limited Company, Donngguan Xianghuo Trading Co., Ltd., Donngguan Laiyang Trading Co., Ltd., Guangzhou Linyu Trading Co., Ltd., Guangzhou Lincan Electronic Technology Co., Ltd., and Guangzhou Senran Electronic Technology Co., Ltd.

[2] As a part of its ongoing litigation campaign, in May 2025, dbest filed multiple individual infringement actions against each of the iBeauty Parties, as well as Amazon. (*See* Case No. 2:25-cv-04573-MWC-JC; 2:25-cv-04586-MWC-JC; 2:25-cv-04591-MWC-JC; 2:25-cv-04596-MWC-JC; 2:25-cv-04583-MWC-JC; 2:25-cv-04587-MWC-JC; 2:25-cv-04588-MWC-JC; 2:25-cv-04589-MWC-JC; 2:25-cv-04623-MWC-JC; 2:25-cv-04566-MWC-JC; 2:25-cv-04614-MWC-JC; 2:25-cv-04606-MWC-JC.) While a different firm represented the iBeauty Parties, BLO appeared, at the request of counsel for the iBeauty Parties, in case number 2:25-cv-04573-MWC-JC for the limited purpose of assisting with a hearing for a preliminary injunction motion.

iBeauty Parties. (Silver Decl. ¶ 3.) Among the prior art references included in the contentions was a product sold by the defendant here, Haixing. (*Id.*)

Under Paragraph 2-2 of this Court's standing order in patent cases, the model protective order authorized by the Northern District of California applied to the case, because no further protective order was entered. *See* N.D. Cal. Model PO.[3] (*See also* Silver Decl. ¶ 4.) That protective order prevents the disclosure of information by a receiving party where the party producing the information has designated it "Confidential" or "Highly Confidential." N.D. Cal. Model PO ¶ 7.1. The invalidity contentions served by the iBeauty Parties were not so designated. (Silver Decl. ¶ 5.) Even so, the model protective order only restricted the receiving party's use of that information, namely, dbest's use.

After the litigation had proceeded for a few months, settlement discussions resumed in August 2025, but BLO did not participate or assist in those discussions in any capacity. (*Id.* ¶ 6.) Rather, the iBeauty Parties retained different counsel to handle those negotiations. (*Id.*) BLO did not prepare, draft, review, or execute the resulting settlement agreement ("iBeauty Settlement Agreement") or provide legal advice relating to the agreement. (*Id.* ¶ 7.) BLO was not aware of any of the terms of the agreement and has never even seen the settlement agreement itself. (*Id.*)

In October 2025, counsel for dbest informed BLO that the parties had reached a resolution. (*Id.* ¶ 9.) BLO confirmed with the iBeauty Parties that there were no further actions necessary to take prior to the dismissal and that BLO could agree to the dismissal. (*Id.* ¶ 10.) BLO was not provided a copy of the agreement to review and was simply informed that BLO could agree to the dismissal of the iBeauty Parties' litigation against dbest. (*Id.*)

[3] As used herein, "N.D. Cal. Model PO" refers to the Stipulated Protective Order For Litigation Involving Patents, Highly Sensitive Confidential Information And/Or Trade Secrets, which is available at https://cand.uscourts.gov/sites/default/files/documents/ND_Cal_Patent_Highly_Sensitive_Model_Prot_Ord_Revised.pdf.

Nevertheless, the action was dismissed in October 2025. (Case No. 10694, Dkt. Nos. 69–70.)

BLO has not otherwise represented the iBeauty Parties—BLO is not and has not served as in-house counsel for any of the iBeauty Parties, is not actively representing them, nor acting on behalf of, under the authority of, or at the direction of any of the iBeauty Parties. (Silver Decl. ¶ 11.)

### C. **<u>dbest Continues Its Pressure Tactics Through Filing the Instant Action.</u>**

dbest then pivoted to a new target, Haixing, presumably drawn to Haixing because the iBeauty Parties cited its product in their invalidity contentions. In October and November 2025, dbest sent "take-down" letters to Amazon seeking to remove Haixing's listing. Haixing sought to communicate with dbest directly, to no avail. Rather than engage, dbest commenced this action against Haixing, asserting infringement of the '446 and '546 Patents that it had previously asserted in counterclaims against the iBeauty Parties. (*See* Dkt. No. 1.)

Haixing responded by seeking a preliminary injunction requiring dbest to withdraw its letters to Amazon concerning Haixing's products and desist from making further such accusations. (Dkt. Nos. 11–12.)

#### 1. *BLO's Current Representation of Haixing*

Haixing retained BLO at the end of December 2025 as counsel in this action, and BLO promptly notified dbest's counsel of the representation. (Silver Decl. ¶ 12.) Without any prior explanation, counsel for dbest sent the iBeauty Parties a notice of breach of the iBeauty Settlement Agreement. (*Id.* ¶ 13.) dbest contended that BLO's representation of Haixing here constituted a breach of the terms of that agreement that barred the iBeauty Parties from challenging dbest's asserted patents, as well as a breach of confidentiality provisions. (*Id.*) dbest further threatened to sue the iBeauty Parties if BLO did not withdraw as counsel for Haixing. (*Id.*)

BLO requested a copy of the Agreement and a list of any specific confidential information within the scope of the iBeauty Settlement Agreement that dbest contended BLO disclosed. (Silver Decl. ¶ 14.) Counsel for dbest refused both requests. (*Id.*)

dbest continued to threaten legal action against the iBeauty Parties if BLO did not withdraw and further pushed for BLO to withdraw its preliminary injunction motion. (*Id.* ¶ 15, Ex A.) dbest further asserted, without citing any legal authority as support, that "any settlement discussions [between dbest and Haixing] will need to proceed without [BLO's] involvement." (*Id.* ¶ 16.)

### D. <u>The Current Withdrawal and Disqualification Dispute.</u>

dbest's threats that it would retaliate against BLO's former clients, the iBeauty Parties, if BLO continued to represent Haixing here left BLO with little recourse, except to voluntarily seek to withdraw from this action. (Dkt. No. 22.) Too impatient to wait for a ruling, dbest escalated the dispute by bringing the instant motion (Dkt. No. 25. *See also* Silver Decl. ¶ 18, Ex. B.)

As discussed below, dbest's disqualification motion is frivolous and improper. Its only purpose is to harass BLO and Haixing in an effort to effectively immunize dbest's patents from legitimate challenge by experienced counsel who have analyzed the patents and developed invalidity arguments about them based on public literature.

## III. LEGAL STANDARD

The disqualification of counsel "is a drastic measure" that is "generally disfavored and should only be imposed when absolutely necessary." *Lennar Mare Island, LLC v. Steadfast Ins. Co.*, 105 F. Supp. 3d 1100, 1107 (E.D. Cal. 2015). The chief concern addressed in a motion for disqualification is the "fiduciary value . . . of client confidentiality." *Costello v. Buckley*, 245 Cal. App. 4th 748, 754 (2016).[4]

[4] State law applies to disqualification motions. *Est. of Adams v. City of San Bernardino*, 658 F. Supp. 3d 784, 788 (C.D. Cal. 2023); *Beltran v. Avon Prods., Inc.*, 867 F. Supp. 2d 1068, 1076–77 (C.D. Cal. 2012); *see also In re Cnty. of L.A.*, 223 F.3d 990, 995 (9th Cir. 2000). Lawyers practicing in this district must comply with

Specifically, "[t]he effective functioning of the fiduciary relationship between attorney and client depends on the client's trust and confidence in counsel" which is jeopardized if the attorney later represents another client in a way where his or her knowledge of the first client's confidences "can be used to the former client's disadvantage." *Id.* at 753 (quoting *Wutchumna Water Co. v. Bailey*, 216 Cal. 564, 571 (1932)); *see also Victaulic Co. v. Am. Home Assurance Co.*, 80 Cal. App. 5th 485, 504 (2022).

Courts have discretion in determining whether to disqualify counsel. *Est. of Adams v. City of San Bernardino*, 658 F. Supp. 3d 784, 789 (C.D. Cal. 2023) (citing *Trone v. Smith*, 621 F.2d 994, 999 (9th Cir. 1980)). In exercising that discretion, however, the Court must "make findings supported by substantial evidence" and must consider the balance among "the clients' right to counsel of their choice, the attorney's interest in representing a client, the financial burden on the client if required to replace disqualified counsel, and the potential that tactical abuse underlays the disqualification proceeding." *Beltran v. Avon Prods., Inc.*, 867 F. Supp. 2d 1068, 1077 (C.D. Cal. 2012); *Est. of Adams*, 658 F. Supp. 3d at 789 (citing *Antelope Valley Groundwater Cases*, 30 Cal. App. 5th 602, 616 (2018)); *QuickLogic Corp. v. Konda Techs., Inc.*, 618 F. Supp. 3d 873, 880 (N.D. Cal. 2022).

Given the drastic impact of a disqualification motion, courts are cautious of motions that may be used for "purely strategic purposes," such as to harass opposing counsel, to delay litigation, or to intimidate an adversary into accepting settlement on terms that would not otherwise be acceptable. *Gregori v. Bank of Am.*, 207 Cal. App. 3d 291, 301 (1989). Such tactics can "pose the very threat to the integrity of the judicial process that [the courts] purport to prevent" with a proper disqualification motion. *Id.* at 300–01.

---

the standards of professional conduct memorialized in the State Bar Act, California Rules of Professional Conduct, and "the decisions of any court applicable thereto." L.R. 83-3.1.2.

To prevent this abuse, "disqualification motions should be subjected to particularly strict judicial scrutiny." *Optyl Eyewear Fashion Int'l Corp. v. Style Companies, Ltd.*, 760 F.2d 1045, 1050 (9th Cir. 1985); *see also Est. of Adams*, 658 F. Supp. 3d at 789; *Beltran*, 867 F. Supp. 2d at 1077. In other words, courts typically permit disqualification of counsel only when "absolutely necessary," and the court's "paramount concern must be to preserve public trust in the scrupulous administration of justice and the integrity of the bar." *Est. of Adams*, 658 F. Supp. 3d at 788–89; *Beltran*, 867 F. Supp. 2d at 1077.

dbest has not only failed to meet this high standard but has also run afoul of the caution that parties should not use a motion to disqualify for improper, strategic purposes.

## IV. BLO SHOULD NOT BE DISQUALIFIED

### A. dbest Lacks Standing to Assert its Claimed Conflict.

"A 'standing' requirement is implicit in disqualification motions." *Great Lakes Constr., Inc. v. Burman*, 186 Cal. App. 4th 1347, 1356 (2010) (citation omitted); *Jarvis v. Jarvis*, 33 Cal. App. 5th 113, 131 (2019). This standing requirement "protects against the strategic exploitation of the rules of ethics and guards against the improper use of disqualification as a litigation tactic." *Great Lakes Constr., Inc.*, 186 Cal. App. 4th at 1358 (2010) (citation omitted). The movant's standing is a "threshold question" that the Court must answer before it ever reaches the question of whether there is a "substantial relationship" between BLO's prior representation and its current representation. *Diva Limousine, Ltd. v. Uber Techs., Inc.*, No. 18-CV-05546-EMC, 2019 WL 144589, at *7 (N.D. Cal. Jan. 9, 2019).

"Generally, before the disqualification of an attorney is proper, the complaining party must have or must have had an attorney-client relationship with that attorney." *Elliott v. Elliott*, No. 1:21-CV-00897-SAB, 2021 WL 5360091, at *10 (E.D. Cal. Nov. 17, 2021)). dbest has never had an attorney-client relationship with

BLO, so dbest lacks standing to bring its disqualification motion. In the absence of the required attorney-client relationship, there is nothing to jeopardize the fiduciary value of client confidentiality that animates the availability of disqualification as a remedy. dbest's motion should be denied on that ground alone.

A minority of California decisions have recognized a limited exception to the general rule limiting standing to those who had an attorney-client relationship, if the attorney in question had "a duty of confidentiality to [the] nonclient arising out of" an attorney-client relationship. *Acacia Pat. Acquisition, LLC v. Superior Ct.*, 234 Cal. App. 4th 1091, 1098, 1102 (2015); *see also Elliot*, 2021 WL 5360091, at *11 (standing requires more than a "general interest in the fair administration of justice" but rather a "duty to protect confidential information of the movant"); *Great Lakes*, 186 Cal. App. 4th at 1357–58. That is, a non-client may have standing to file a motion to disqualify an attorney, if the non-client had a "personal stake in the duty of loyalty [the attorney] owed to his client[.]" *Elliot*, 2021 WL 5360091, at *13; *Great Lakes*, 186 Cal. App. 4th at 1357–58. There is no such "personal stake" here, and therefore, the exception to the standing requirement does not apply.

dbest quotes *Kennedy v. Eldridge* for the bald proposition that "[c]ase law abounds" with examples that permitted non-clients to bring disqualification motions. (Mot. at 9 (quoting *Kennedy v. Eldridge*, 201 Cal. App. 4th 1197, 1204 (2011).) But dbest offers no analysis as to whether those cases are analogous to the facts here. (Mot. at 9 ("[T]here is no question that the Court may consider dbest's challenge.").) The cited decisions are not analogous and therefore do not save dbest's lack of standing.

dbest's chief cited authority *Kennedy* involved "messy interfamilial squabbles" and also was not "based solely on the receipt of confidential information." *See Acacia*, 234 Cal. App. 4th at 1099–1100 (summarizing *Kennedy*). The attorney in question sought to represent his son in a custody dispute over his child (the

attorney's grandson) against the child's mother. *See Acacia Pat. Acquisition, LLC*, 234 Cal. App. 4th at 1099–100 (summarizing *Kennedy*). The attorney had previously represented the mother's father in a divorce. *Id.* The Court treated the mother and her father (the attorney's former client) as a "single unity for purposes of determining whether an ethical conflict exists." *Id.* at 1100 (quoting *Kennedy*, 201 Cal. App. 4th at 1208). The Court determined the mother shared her father's interest in the attorney-client relationship with the attorney who was now acting adverse to the mother in a custody dispute. This conflict was exacerbated by the fact that the attorney might have needed to be a witness in the custody dispute. *Acacia Pat. Acquisition, LLC*, 234 Cal. App. 4th at 1100 (citing *Kennedy*, 201 Cal. App. 4th at 1209). There is nothing analogous about the *Kennedy* familial relationships that apply to the facts here, rendering the results from that case inapplicable here.

dbest also relies on *Diva Limousine* for its baseless assertion that it has standing to bring the instant motion. (Mot. at 9 (citing *Diva Limousine*, 2019 WL 144589, at *7).) There, the movant sought to disqualify its adversary's attorney because the movant had previously shared confidential and privileged information with the attorney pursuant to a common interest agreement with the attorney's former client. *Diva Limousine, Ltd.*, 2019 WL 144589, at *7. That is, although the movant did not have an attorney-client relationship with the attorney it sought to disqualify, the common interest agreement extended the attorney's duty of confidentiality to the non-client. *Id.*

dbest has no stake whatsoever in BLO's duties to its clients, who are former *adversaries* of dbest. While dbest and the iBeauty Parties ultimately settled their dispute, [redacted] that did not give dbest any stake in BLO's attorney-client relationship with the iBeauty Parties. A lawyer who represents [redacted] does not owe such a duty to [redacted] *Alchemy II, Inc. v. Yes! Ent. Corp.*, 844 F. Supp. 560, 565 (C.D. Cal. 1994);

*see also Telectronics Proprietary, Ltd. v. Medtronic, Inc.*, 836 F.2d 1332, 1136–39 (Fed. Cir. 1988) (no conflict of interest where attorney for licensee of a patent as well as its original owner acted adverse to assignee of same patent). Even under the "minority rule" in California, dbest has no standing to seek disqualification. Its motion should, accordingly, be denied.[5]

**B. <u>BLO Has Not Violated Rule 1.9(a), as There is No Conflict.</u>**

Even if dbest had standing to assert its disqualification theory, there is no conflict of interest between BLO's former and current representations that would warrant disqualification. Pursuant to California Rules of Professional Conduct, Rule 1.9(a), a "lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are ***materially adverse*** to the interests of the former client unless the former client gives informed written consent." (emphasis added). Pursuant to this requirement, a lawyer cannot "use against the former client knowledge or information acquired by virtue of the previous relationship." *See* Cal R. Prof. Conduct 1.9, Comment 1. BLO has not violated Rule 1.9(a).

BLO's representation of Haixing is not adverse to the iBeauty Parties' interests. In the iBeauty Case, BLO's former clients sought declaratory judgment of non-infringement and invalidity of dbest's patents and raised non-infringement and invalidity defenses to dbest's counterclaims. Here, Haixing is defending against a claim of infringement of some of those patents (the '446 and '546 patents) and similarly asserts non-infringement and invalidity in defense. (*See* Dkt. No. 32 ¶¶ 1, 5, 8–9, 13, 24–33.) There is (and can be) no conflict of interest in BLO's current representation because the interests of its former and current clients are consistent

[5] California law also contemplates that a nonclient could have standing where an ethical breach is "manifest and glaring and so infects the litigation. . . that it impacts the moving party's interest in a just and lawful determination" of the case. *Kennedy*, 201 Cal. App. 4th at 1204 (internal quotations omitted). As discussed below in Section **Error! Reference source not found.**, there is no conflict at all, much less a "manifest and glaring" conflict.

and aligned, not adverse. *See Hous. Is a Hum. Right v. Cnty. of Orange*, No. SACV19388DOCJDEX, 2019 WL 3002852, at *4 (C.D. Cal. June 13, 2019) (concluding absence of adverse interest where Jones Day was advocating for the homeless in an earlier litigation and was now defending against the claims of the homeless because the "case law does not recognize such a sweeping basis for disqualification").

dbest contends that the adverse interests here arise from the iBeauty Parties' settlement agreement resolving their dispute with dbest. (Mot. at 13.) Specifically, dbest contends that Haixing's challenges to BLO's '446 and '546 Patents are adverse to the iBeauty Parties' interests as [redacted]. (*Id.*) According to dbest, [redacted] (*Id.*) dbest is wrong.

Contrary to dbest's suggestion, [redacted] (*See* Mot. at 13.) "[A] (non-exclusive) license to practice a patent is in substance nothing but a covenant not to sue: what such a license is, at its core, is an elimination of the potential for litigation." *Prism Techs. LLC v. Sprint Spectrum L.P.*, 849 F.3d 1360, 1370 (Fed. Cir. 2017); *see also Ulead Sys., Inc. v. Lex Computer & Mgmt. Corp.*, 351 F.3d 1139, 1147 (Fed. Cir. 2003) (non-exclusive licensee gets a "personal and not a property, interest in the patent"). The patent owner retains the right to "license other parties, or to practice the patent itself." *Uniloc USA, Inc. v. Motorola Mobility LLC*, 52 F.4th 1340, 1351 (Fed. Cir. 2022).

Nothing about BLO's representation of Haixing, including Haixing's challenge to the validity of dbest's patents, is materially adverse to the iBeauty Parties' interests in [redacted]. If anything, Haixing's challenge would inure to the *benefit* of the iBeauty Parties because [redacted]. *Lear, Inc. v. Adkins*, 395

U.S. 653, 667 (1969) ("It is generally the rule that licensees may avoid further royalty payments, regardless of the provisions of their contract, once a third party proves that the patent is invalid.").

dbest's cited decision, *Celgard*, is inapposite. (*See* Mot. at 13 (citing *Celgard, LLC v. LG Chem, Ltd.*, 594 F. App'x 669, 670 (Fed. Cir. 2014)). There, a patent owner sought an injunction barring sales of batteries it accused of infringement. *Celgard*, 594 F. App'x at 671. The patent owner also sent its injunction motion to third-party purchasers of the accused batteries in connection with commercial negotiations. *Id.* Counsel for the patent owner also represented one such third-party purchaser in an unrelated matter. *Id.* The Federal Circuit, applying North Carolina rules on concurrent representation, held that counsel's representation of the patent owner was "directly adverse" to the interests of counsel's concurrent client, the third-party purchaser, requiring disqualification. *Id.* Importantly, this was not just adversity in an "economic sense" but also in a sense that burdened the attorney-client relationships at issue. *Id.* at 672. Counsel's advocacy for the patent owner not only meant the purchaser might need to find a new supplier but also gave the patent owner leverage in negotiating directly with the purchaser. *Id.*

Unlike in *Celgard*, here, the preliminary injunction that Haixing sought would do nothing to harm the iBeauty Parties' interests. *See id.* at 671–72 (quoting *Freedom Wireless, Inc. v. Boston Commc'ns Group, Inc.*, No. 2006-1020, 2006 WL 8071423, at *2–*3 (Fed. Cir. Mar. 20, 2006) (agreeing that counsel should be disqualified because counsel's "advocacy" in support of an "injunction will adversely affect [another client's] interest in being free of the bar of the injunction," and where "an injunction obtained on behalf of one client. . . limit[s] the activity of another client," a "clear and direct conflict of interest" arises).

dbest's speculation that BLO's relationship with Haixing is "contentious" is unfounded, unseemly, and entirely irrelevant. (*See* Mot. at 14.) dbest suggests that

neither the iBeauty Parties nor Haixing provided "prior written informed consent" for BLO's representation here, but as discussed, none was required because there is no conflict to resolve. If BLO's withdrawal motion was "acrimonious," per dbest's characterization (*see id.*), that is because dbest's extortive threats against the iBeauty Parties forced BLO into an impossible position. Haixing made its choice of counsel, as is its right to do, and BLO accepted that representation, which did nothing to jeopardize the iBeauty Parties' interests. dbest's weaponization of an improper disqualification motion did. BLO made its withdrawal motion in the interest of protecting the iBeauty Parties from dbest's misconduct, but it remained important to clarify the record. The Court should not permit dbest's counsel's blatant exploitation.

### C. <u>BLO Did Not Share Any Confidential Information.</u>

dbest contends that BLO shared the iBeauty Parties' confidential information with Haixing. (Mot. at 15.) dbest offers no factual basis for its theory; it simply asserts there is "no way" BLO could act as a "zealous advoca[te]" for Haixing without breaching client confidences with the iBeauty Parties. (Mot. at 15.)[6]

The core of dbest's complaint here concerns Haixing's arguments challenging the validity of dbest's patents. (Mot. at 3.) dbest contends Haixing's invalidity arguments were based on the iBeauty Parties' invalidity contentions. But the iBeauty Parties' invalidity contentions were not confidential, particularly not in a manner that implicated their interest in attorney-client confidentiality. BLO served the iBeauty Parties' invalidity contentions on dbest, and no confidentiality agreement or protective order prohibited their further disclosure. (Silver Decl. ¶¶ 3–5.) The lack of confidentiality for invalidity contentions makes sense because invalidity contentions pertain to the identification of *public* information at the time of the claimed invention. 35 U.S.C. §§ 102–103; *Kimberly-Clark Corp. v. Johnson & Johnson,* 745

[6] dbest's counsel's assertion is troubling to the extent Orbit IP LLC is incapable of maintaining multiple clients' confidences.

F.2d 1437, 1453 (Fed. Cir. 1984).[7] Indeed, in at least one other case against dbest challenging the same patents, invalidity contentions were filed publicly on the relevant docket. (Lucia Decl. ¶¶ 2–4.)

dbest describes the invalidity contentions served on behalf of the iBeauty Parties as "non-public," but that does not mean they were confidential. (Mot. at 3.) They are "non-public" simply because they were served by email and not filed on the public docket. (Silver Decl. ¶¶ 3, 5.) Indeed, the model protective order applicable in that case provided that the "protection it affords from public disclosure and use extends *only* to the limited information" designated under that order. N.D. Cal. Model PO ¶ 1 (emphasis added).

Here, the only information related to the iBeauty Case that BLO used in this case was its own work product assessing public prior art references. (Silver Decl. ¶ 17.) BLO was entitled to utilize its attorney work product, provided it was not adverse to the iBeauty Parties. Indeed, such reuse is *encouraged*. *Mosqueda, v. Sedgwick Claims Management Services et al.*, No. 2:21-CV-04811-SB-AS, 2022 WL 4546879, at *4 (C.D. Cal. Aug. 24, 2022) ("Of course, relying on past work product in appropriate circumstances is efficient and proper."); *Robinson v. Open Top Sightseeing San Francisco, LLC*, No. 14-CV-00852-PJH, 2018 WL 2088392, at *4 (N.D. Cal. May 4, 2018) ("[A]ttorneys should be encouraged to reuse applicable work product to increase efficiency and reduce costs . . . ."); *see also Eric B. Fromer Chiropractic, Inc. v. New York Life Ins. & Annuity Corp.*, No. CV 15-04767-AB (JCX), 2017 WL 11632540, at *4 (C.D. Cal. Sept. 22, 2017) (discussing ABA Formal Op. 930379, which discussed proper billing practice when a lawyer "reuse[s] old work product" without questioning the propriety of such reuse). As with any law firm, if BLO were unable to reuse its assessments of the law or historical facts, its

---

[7] There are limited exceptions, if, for example, the invalidity theory is based on the challenger's pre-existing product.

business model might not be sustainable. (Declaration of Gokalp Bayramoglu ("Bayramoglu Decl.") ¶ 4.)

dbest also contends BLO would need to share the iBeauty Parties' [redacted] with Haixing as part of zealous advocacy. (Mot. at 3.) dbest offers no case law to support its position, and it defies logic. Most simply, BLO does not know the [redacted], because it has never seen the [redacted] between dbest and the iBeauty Parties. (Silver Decl. ¶ 7.) Even so, the [redacted] plainly are not part of the iBeauty Parties' attorney-client confidences because dbest, their adversary, knows them too. And nothing about the settlement discussions to which BLO was privy, was subject to any confidentiality provision. (*Id.* ¶ 8.) Moreover, [redacted] concerning the same or related patents are regularly produced in discovery in patent cases—including settlement agreements. *See In re MSTG, Inc.*, 675 F.3d 1337, 1348 (Fed. Cir. 2012). So, any [redacted] would likely be available to Haixing for use in this case anyway, further underscoring that nothing about BLO's representation of Haixing implicated attorney-client confidences.

**D. <u>Because Disqualification is not Warranted, No Remedy is Warranted, but dbest's Extreme Proposed Remedy is Entirely Improper.</u>**

Haixing is now represented by new counsel, and BLO understands new counsel will address dbest's request that the Court strike Haixing's invalidity contentions. (*See* Mot. at 16–17.) BLO notes, however, that dbest's proposal is *precisely* the kind of "tactical abuse" of disqualification motions against which courts caution. *See Est. of Adams*, 658 F. Supp. 3d at 789. In essence, dbest seeks to use an improper disqualification motion—paired with extortive threats concerning BLO's prior client—to immunize its patents from challenge by the lawyers best positioned

to bring that challenge, essentially disqualifying each qualified firm until none are left to defend against dbest's aggressive tactics.

A core part of BLO's practice entails providing companies with high-quality, yet cost-efficient representation against patent-assertion entities and other serial litigants in patent cases and many other kinds of intellectual property disputes. (Bayramoglu Decl. ¶ 2.) A key piece of BLO's cost-effective strategy is that it frequently represents multiple clients in suits involving the same patents. (*Id.* ¶ 3.) This enables BLO to use the knowledge it gained in a first case, analyzing public information such as the patent's specification, claim scope, and prosecution history, as well as public literature that could invalidate the patent, to efficiently represent a company facing claims involving the same patent in a second case. (*Id.*) dbest's disqualification theory here would pose significant risk to BLO's cost-effective litigation-defense model because it would effectively mean that BLO is precluded from representing multiple defendants facing claims involving the same patent, at least if one of the clients becomes [redacted] such as through settlement. (*Id.* ¶ 4.) Such a result, especially if adopted as a playbook by other patent owners, would be detrimental to public policies encouraging legitimate challenges to patent validity and encouraging settlement. *See Immersion Corp. v. Sony Computer Ent. Am. LLC*, 188 F. Supp. 3d 960, 970 (N.D. Cal. 2016); *Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1230 (9th Cir. 1989).

**E. <u>dbest Should Pay BLO's Attorneys' Fees.</u>**

The Court should award BLO its attorneys' fees reasonably incurred in responding to dbest's vexatious and bad faith tactics. Any attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 18 U.S.C § 1927. An award of fees under this provision requires a finding of "bad faith," which is "present when an

attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent." *W. Coast Theater Corp. v. City of Portland*, 897 F.2d 1519, 1528 (9th Cir. 1990). That standard is readily met here.

dbest's conduct throughout the course of this litigation has no doubt been unreasonable and vexatious. As discussed above, dbest threatened to disqualify BLO and sue its former clients, the iBeauty Parties, based on a fabricated theory of breach of contract, unless BLO withdrew its representation here—notably, neither BLO nor Haixing, the interested parties here, are parties to the contract at issue, nor have they even *seen* it. (Silver Decl. ¶¶ 7, 15–16, 18, Exs. A, B.) Nor were either involved in negotiating or preparing the agreement. (*Id.* ¶ 7.) Even after dbest had already accomplished the ends of its extortive scheme, namely BLO's withdrawal, dbest pressed on with this entirely unfounded disqualification motion, which is rife with rank mischaracterization of the law and facts and plainly unnecessarily multiplied the proceedings here. This is precisely the kind of unreasonable and vexatious conduct that section 1927 aims to prevent. *See Zheng v. Internet Corp. for Assigned Names & Numbers*, No. 2:25-CV-04808-SPG-AJR, 2025 WL 4055401, at *3–5 (C.D. Cal. Dec. 23, 2025) (finding that the plaintiff acted in bad faith and imposing fees under section 1927 because the plaintiff "attempted to use further litigation as a threat" and engaged in "repeated and persistent" procedural violations).

What is more, dbest's disqualification motion invokes significant policy implications. In particular, disqualifying an attorney from a case imposes substantial financial hardship on the client to obtain substitute counsel. *Gregori v. Bank of Am.*, 207 Cal. App. 3d 291, 300 (1989), *modified* (Feb. 17, 1989). Additionally, a client who is deprived of its attorney of choice "suffers a particularly heavy penalty where, as . . . here, [the] attorney is highly skilled in the relevant area of law." *Id.* Here, it is clear that dbest's sole motivation in seeking disqualification of BLO is to deprive Haixing of its attorney of choice—the exact "tactical abuse" that courts consider

when determining whether to disqualify counsel. *See Estate of Adams,* 658 F. Supp. 3d at 789; *see also Beltran*, 867 F. Supp. 2d at 1084. The only result of permitting disqualification of BLO is significant cost and prejudice to Haixing by having to secure new representation that may not be its preferred counsel. dbest's conduct runs afoul of public policy and should not be tolerated.

The purpose of Section 1927 is to "deter attorney misconduct, or to compensate the victims of an attorney's malfeasance, or to both compensate and deter." *Zheng*, 2025 WL 4055401, at *2. In light of dbest's counsel's extortion and improper duplication of the proceedings, sanctions under Section 1927 are appropriate here. BLO, therefore, is entitled to recover its costs, expenses, and attorneys' fees in connection with the instant motion, including fees incurred in preparing for the March 27 hearing, (*see* Lucia Decl. ¶¶ 5–9). *See Haynes v. City & Cnty. of San Francisco*, 688 F.3d 984, 987 (9th Cir. 2012) (establishing that section 1927 "confers substantial leeway on the district court" in imposing sanctions, such that courts "enjoy much discretion in determining whether and how much sanctions are appropriate").

## V. <u>CONCLUSION</u>

For the foregoing reasons, BLO respectfully requests that the Court deny Plaintiff's Motion to Disqualify in its entirety. BLO further requests that pursuant to 28 U.S.C. Section 1927, the Court award BLO its fees incurred with respect to this motion.

Dated: March 6, 2026

**STEPTOE LLP**

By: *_/s/ Jamie Lucia_*
Jamie Lucia
J. William "Bill" Toth
Nicolena Beck

Attorneys for Defendant's Counsel
BAYRAMOGLU LAW OFFICES LLC

**CERTIFICATE OF COMPLIANCE PURSUANT TO L.R. 11-6.2**

The undersigned, counsel of record for Defendant's counsel Bayramoglu Law Offices LLC, certifies that this brief contains 6,068 words, which complies with the word limit of L.R. 11-6.1.

*/s/ Jamie Lucia*
Jamie Lucia

## CERTIFICATE OF SERVICE

I hereby certify that on March 6, 2026, a copy of the foregoing **OPPOSITION TO PLAINTIFF'S MOTION TO DISQUALIFY COUNSEL AND TO STRIKE DEFENDANT'S PAPERS** was filed electronically and served by U.S. Mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the court's electronic filing system. Parties may access this filing through the court's CM/ECF System.

*/s/ Jamie Lucia*
Jamie Lucia